IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DENNIS R. PEKKOLA, CAROL L. PEKKOLA, | ) ) ) No. 6:12-cv-02147-PA |
| Plaintiffs, | ) ) **ORDER** ) |
| v. | ) ) |
| FIDELITY NATIONAL TITLE INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) ) |

**PANNER, J.**

Plaintiffs filed their complaint in this case alleging breach of contract. Defendant moves for summary judgment. For the reasons discussed below, Defendant's motion is GRANTED. Judgment is for Defendant.

### Background

In June 2006, Plaintiffs lent $287,171.84 to William Bundy (Bundy). Plaintiffs secured a promissory note from Bundy and the debt was secured by deeds of trust on two parcels of property owned by Bundy. The deeds of trust were recorded and Plaintiffs purchased title insurance from Defendant, insuring that Plaintiffs' liens were first in priority. The title insurance

1 - ORDER

policy between the parties excluded coverage for subsequent indebtedness, with a few minor exceptions.

In March 2007, Plaintiffs loaned Bundy an additional $173,000, secured by a number of classic cars. Plaintiffs modified their deed of trust to increase the loan amount, but did not seek additional coverage or endorsements from Defendant. Bundy gave Plaintiffs a new promissory note for the combined amount of $457,864.90 and together Plaintiffs and Bundy executed a new security agreement.

Subsequently, the classic cars were sold for $207,055 which was used to pay down Bundy's debt to Plaintiffs. One of the parcels of real property was also sold and the proceeds were likewise applied to the debt. Plaintiffs did not make any distinction in their accounting between the original advance of $287,171.84 and the subsequent advance of $173,000. Both sums were combined and all payments were applied to the combined amount.

In November 2010, Plaintiffs learned that the remaining parcel of real estate was encumbered by a lien held by Umpqua Bank, and that Umpqua's lien was superior in priority. Plaintiffs promptly submitted a claim to Defendant based on that discovery. Bundy then defaulted on his obligations. Umpqua Bank initiated a non-judicial foreclosure and, on March 21, 2012, the property was sold, extinguishing Plaintiff's interest in the property and leaving their debt unsecured.

In the meantime, Bundy passed away. Plaintiffs attempted to pursue a claim against Bundy's estate, but learned that the

2 - ORDER

estate was both insolvent and encumbered by state and federal tax liens. Although the accounting is somewhat muddied, the record shows that Plaintiffs received a total of $621,366.58 on the combined debt amount of $457,864.90. At the time of the foreclosure sale the ending principal and interest on the loan was $70,054.07. That sum, along with considerable fees and penalties, resulted in a total outstanding balance of approximately $113,000.

Plaintiffs presented a formal proof of loss to Defendant for the amount of the outstanding balance. Defendant declined to indemnify Plaintiffs on the basis that they had made a second, uninsured advance to Bundy. Plaintiffs then brought this action to recover the outstanding balance.

## Discussion

Defendant advances several arguments in support of their motion for summary judgment. First, Defendant contends that Plaintiffs' 2007 advance of funds was specifically excluded under the policy and that, as a matter of law, they are entitled to prevail. Second, Defendant argues that Plaintiffs have suffered no loss by the insured perils because they were paid in full for the insured portion of their loan. Finally, Defendant contends that the execution of the second promissory note constitutes novation and relieved them of their obligation to indemnify under the original agreement. I will address each of the issues in turn.

**I. Legal Standard**

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material of fact and that

3 - ORDER

the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of material fact exists. <u>Celotex Corp. V. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Devereaux v. Abbey</u>, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. <u>Playboy Enters., Inc. v. Welles</u>, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting <u>Anderson</u>, 477 U.S. at 248).

When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. <u>Devereaux</u>, 263 F.3d at 1076. In assessing whether a party has met its burden, the court views this evidence in the light most favorable to the non-moving party. <u>Allen v. City of Los Angeles</u>, 66 F.3d 1052, 1056 (9th Cir. 1995).

4 - ORDER

**II. It is impossible to distinguish between the first and second advance and assign the losses suffered by Plaintiff to one or the other.**

The interpretation of an insurance policy is a question of law. <u>Hoffman Const. Co. v. Fred S. James & Co.</u>, 313 Or 464, 469 (1992). In interpreting insurance contracts, "the primary and governing rule" is to ascertain the intention of the parties, based on the terms and conditions of the insurance policy. <u>Id.</u>

In this case, the policy insures Plaintiffs "against loss or damage, not exceeding [$287,171.84] sustained or incurred by the insured by reason of: . . . Any defect in or lien or encumbrance on the title." There are three terms of the policy which are at issue:

First, Exclusion 3(c) provides that "The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of: . . . Defects, liens, encumbrances, adverse claims or other matters: . . . resulting in no loss or damage to the insured claimant."

Condition and Stipulation 7 provides "This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described."

Finally, Condition and Stipulation 8(d)(i) provides "The Company shall not be liable for: (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and

5 - ORDER

reasonable amounts expended to prevent deterioration of improvements."

On the basis of these terms, Defendant contends that Plaintiffs' second advance violates the terms of Condition and Stipulation 8(d)(i) and Defendant is not, therefore, obligated to indemnify them. As a further matter, Defendant argues that any losses sustained by Plaintiffs are attributable to the second advance and not the insured debt and therefore Defendant is excused from the obligation to indemnify under Exclusion 3(c) and Condition and Stipulation 7.

Plaintiffs concede that the second advance was excepted from coverage by Condition and Stipulation 8(d)(i) and that Defendant cannot be held liable for any amount exceeding the original $287,171.84. However, Plaintiffs take the position that the sale of the classic cars satisfied the second advance. Plaintiffs maintain that the outstanding debt at the time of the foreclosure sale was attributable to the original, insured transaction. Therefore, Plaintiffs argue, they have suffered a loss as a result of a lien on the title.

A great deal of the parties' briefing revolves around whether the amounts paid to Plaintiffs either by Bundy or as a result of sale of the securities should be attributed to the debt incurred by the first or the second advance. Defendant takes the position that all payments should be applied to the oldest outstanding debt under a "first-in, first-out" method of accounting. Under that system, all payments would be applied to the original $287,171.84 before they would be applied to the amounts owing under the second advance. Plaintiffs contend that

6 - ORDER

there is nothing in the insurance policy or in law which obligates them to apply the payments to oldest debt or to completely satisfy the oldest portion of the debt before payments are applied to the newer portions of the debt.

In support of their contention that payments should be applied to the oldest debts first, Defendant cites <u>Fowler v. Courtemanche</u>, 202 Or 413 (1954). The Oregon Supreme Court's decision in that case turned on whether payments should be applied to amounts which were due as opposed to obligations which had not yet matured. The Court concluded that payments must, in the absence of an agreement to the contrary, be applied to amounts which were due. <u>Id</u>. at 446-47.

In this case, however, the debts were reckoned together and the payments applied to the combined amount. Because no distinction was made between the debts, it cannot be said that the amount owing under the first note was due and the amount owing under the second advance was not yet due.

It is impossible to distinguish between the two debts on the basis of the record before me. Summary judgment is therefore not appropriate on the basis of whether the original debt has been satisfied. I am similarly unable to determine if Plaintiff has suffered a loss of the insured perils.

**III. Defendant's obligation to indemnify was based on the original contract and when that contract was extinguished so was Defendant's obligation.**

Defendant argues that they issued the insurance policy under the terms of the original note and the execution of the new note and security agreement constituted novation, extinguishing the

7 - ORDER

original obligation. When the original obligation was extinguished, Defendant argues, so was their obligation to indemnify. Plaintiffs take the position that Defendant cannot demonstrate intent to extinguish the original obligation, only to modify it and that Defendant remains bound to indemnify them under the terms of the policy.

Novation is defined as "the substitution by mutual agreement of one debtor or of one creditor for another, whereby the old debt is extinguished, or the substitution of a new debt or obligation for an existing one, which is thereby extinguished." Credit Bureaus Adjustment Dept., Inc. v. Cox Bros., 207 Or 253, 257 (1956). The essential elements of novation are "(1) a previous valid obligation; (2) the agreement of all the parties to the new contract; (3) the extinguishment of the old contract; and (4) the validity of the new one." 66 C.J.S. *Novation* § 3 (2013). "In order to have a novation by substitution of a new obligation between the same parties, both parties must consent that the new agreement is to have this effect." 66 C.J.S. *Novation* § 12 (2013). Novation is never presumed and the party asserting novation bears the burden of establishing all of the essential elements by legal and sufficient evidence. Credit Bureaus, 207 Or at 258. "The controlling element is the intention of the parties, and, unless there is a clear and definite intention on the part of all concerned to extinguish the old obligation by substituting the new one therefor, a novation is not effected." Id. (Citing 66 C.J.S. *Novation* § 18).

Courts in Oregon generally apply the term "novation" to circumstances where a new party replaces one of the existing

8 - ORDER

parties to a contract. <u>Eagle Indus., Inc. v. Thompson</u>, 321 Or 398, 413 (1995). A situation where a new contract replaces an existing contract between parties, although elsewhere referred to as a novation, may be termed a "substituted contract." <u>Id.</u>

Under a substituted contract, "the original obligation is totally extinguished and the creditor's only rights and remedies are those available under the new agreement." <u>Savelich Logging Co. v. Preston Mill Co.</u>, 265 Or 456, 461-62 (1973). When a contract is so extinguished:

> [It] is extinguished as to all parties connected with it, just and precisely as happens when an obligation is extinguished by payment or in any other way. . . . The extinction of the original contract destroys all the accessory rights, liens, and privileges appertaining to it. Moreover, where the original obligation has been secured by sureties, endorsers, or guarantors, their liability disappears with the debt to which it has been collateral.

66 C.J.S. *Novation* § 29 (2013).

In the present case, in 2006, Plaintiffs and Bundy executed a Promissory Note and Security Agreement as described in the background section above. Schedule A of the insurance policy issued by Defendant to Plaintiffs reads "The insured mortgage and assignments thereof, if any, are described as follows: Trust Deed to secure an indebtedness in the amount shown below and any other obligations secured thereby: Amount $287,171.84, Dated June 15, 2006... ." Taken together with Condition and Stipulation 8(d)(i), which specifically excludes subsequent indebtedness, it is clear from the terms of the insurance policy that the parties intended the policy to be connected to the original note between Plaintiffs and Bundy.

9 - ORDER

On March 2, 2007, Bundy executed a new promissory note in the amount of $457,864.90. One of the terms of the 2007 promissory note is "The principal balance of this Promissory Note includes the principal, plus interest on the Promissory Note dated June 15, 2006. The Maker [Bundy] intends for this Promissory Note to replace the Promissory Note dated June 15, 2006, in the principal amount of $287,171.84." The Promissory Note is signed by Bundy.

On the same day, Plaintiffs and Bundy together executed a new security agreement. The March 2007 security agreements contains the following term: "This Agreement constitutes the entire agreement of the parties as to the matters set forth in this Agreement, and supercedes and replaces all prior agreements between the parties relating to the subject matter hereof." The security agreement is signed by Plaintiffs and Bundy.

Taken together, the 2007 promissory note and security agreement unambiguously demonstrate that both Plaintiffs and Bundy intended for their new agreement to replace the previous one. As in <u>Savelich</u>, the new agreement must necessarily completely extinguish the existing obligation and Plaintiffs must look to the terms of the new contract for any rights or remedies. It is likewise clear from the terms of the insurance policy that the parties agreed that the policy would indemnify Plaintiffs only under the terms of the original contract between Bundy and Plaintiffs. When the original contract was extinguished, so were the accessory rights, privileges, sureties, and guarantees, including Defendant's obligation to indemnify Plaintiffs under the insurance policy. Accordingly, I conclude that Defendant is

10 - ORDER

entitled to judgment as a matter of law.

## Conclusion

The extinguishment of the original contract between Plaintiffs and Bundy also extinguished Defendant's obligation to indemnify Plaintiffs under the insurance policy. Defendant's motion for summary judgment (#7) is GRANTED. Judgment is for the Defendant.

IT IS SO ORDERED.

DATED this __25__ day of July, 2013.

_____
Owen M. Panner
United States District Judge

11 - ORDER